IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| FRANCES SPURLOCK AND JEFFREY SPURLOCK *et al.*, ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | No. 3:09-CV-00756 |
| DAVID FOX *et al.*, ) ) | Judge Nixon |
| Defendants. ) | |

### DEFENDANTS' MOTION TO STRIKE EVIDENCE PRESENTED DURING THE PRELIMINARY INJUNCTION HEARING AND MEMORANDUM IN SUPPORT THEREOF

Defendants move to strike four categories of documents and testimony from the record of this matter. First, defendants move to strike any and all iterations of Dr. Pedro Garcia's memoranda. These memoranda contain multiple layers of hearsay and constitute inadmissible lay opinion. Second, defendants move to strike plaintiffs' expert witness reports, as well as portions of testimony by Drs. Tommie Morton-Young and Leslie Zorwick. The reports themselves are inadmissible hearsay. Furthermore, the challenged portions of Drs. Morton-Young and Zorwick's testimony do not satisfy the "relevance" and "reliability" principles established by *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Third, defendants move to strike speculation and lay opinion about what motivated the Student Assignment Task Force and / or the Board of Education. Finally, defendants move to strike plaintiffs' depositions and plaintiffs' expert depositions because the testimony therein is inadmissible hearsay, at least insofar as it is offered by plaintiffs.

R:\L\L\L-15000+\L-15066\Pleadings\Motions & MOL\Motion to Strike Evidence Presented During Hearing (2-16-10).doc

Case 3:09-cv-00756   Document 128   Filed 02/16/2010   Page 1 of 19

For these reasons, and as set forth in detail below, defendants respectfully request that the Court strike the foregoing categories of documents and testimony from the record of this matter.

## I. THE COURT SHOULD STRIKE DR. GARCIA'S MEMORANDA (PLAINTIFFS' EXHIBITS 61 AND 118-20)

First, defendants move that the Court strike all iterations of Dr. Garcia's memoranda. (Plaintiffs' Exhibits 61 and 118-20). These memoranda should be stricken because most, if not all, were authored after Dr. Garcia's duties with the School Board had ended. And if these memoranda were authored after Dr. Garcia's duties had ended, they do not constitute "admission[s] by a party-opponent" under FED. R. EVID. 801(d)(2)(D). Moreover, these memoranda should be stricken because, even if Dr. Garcia's duties had not ended, his statements therein are not statements "concerning a matter within the scope of [his] agency or employment." For this additional reason, FED. R. EVID. 801(d)(2)(D) is not applicable. Third, these memoranda should be stricken because Dr. Garcia purports to relay what other individuals told him, and in several instances, what someone told him about a conversation that person had with someone else. Thus, several of the statements contain multiple layers of inadmissible hearsay. Finally, these memoranda should be stricken insofar as they contain speculation and / or lay opinion about what motivated the School Board and / or its individual members.

### 1. Dr. Garcia's Memoranda Are Hearsay Because They Were Prepared After His Employment With The School Board Ended

FED. R. EVID. 802 states that "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered to prove the truth of the matter asserted." Rule 801(d)(2) states that an "admission by a party-opponent" is not hearsay, but by its very terms, that exception does not apply in the instant case. Rule 801(d)(2) states:

> The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) *a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship*, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy. The contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority under subdivision (C), the agency or employment relationship and scope thereof under subdivision (D), or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E).

*Id.* (emphasis added).

The only exception that is conceivably applicable to Dr. Garcia's memoranda is the one set forth in subsection (D); however, that exception is specifically limited to a statement by a party's agent or servant *"made during the existence of the relationship."* FED. R. EVID. 801(d)(2) (emphasis added). Plaintiffs bear the burden of "establishing the proper foundation for the admissibility of the statements . . . ." *Liadis v. Sears, Roebuck and Co.*, 47 Fed.Appx. 295, 303 (6th Cir. 2002). And they have failed to do so.

By way of background, on Saturday, January 19, 2008, the School Board adopted a severance agreement for Dr. Garcia, thereby terminating his duties with the Board. By the next Monday, he had his office completely cleared out. (Trial Tr. Vol. IX at 1431:1-1432:1). Thus, to the extent Dr. Garcia prepared any memoranda after Monday, January 21st (at the latest), he prepared them after the relationship had ended. Accordingly, FED. R. EVID. 801(d)(2)(D) would not be applicable.

Plaintiffs only contend that one of the Garcia memoranda was actually prepared before his employment relationship ended – Plaintiffs' Exhibit 61. Specifically, Plaintiffs contend that Exhibit 61 was prepared on January 16, 2008, though the record is not clear on the issue. The only witness who places the memoranda in mid-January 2008 is George Thompson. During the

hearing, Mr. Thompson initially stated that he received the memoranda "before Dr. Garcia left in January." (Trial Tr. Vol. I at 170:21-171-3). But then Mr. Thompson stated that he *did not* have the memorandum when he made remarks during the School Board's May 28, 2008 Study Session. (*Id.* at 171:4-9). Shortly thereafter, Mr. Thompson stated that he had, in fact, received and digested the memorandum before he made his remarks during the School Board's May 28th meeting.

Plaintiffs bear the burden of "establishing the proper foundation for the admissibility of the statements . . . ." *Liadis*, 47 Fed.Appx. at 303. Part of the foundation for the hearsay exception in FED. R. EVID. 801(d)(2)(D) is that the statement be made by a party's agent or servant *"during the existence of the relationship." Id.* (emphasis added). Because of the ambiguity of Mr. Thompson's testimony, Plaintiffs have failed to establish that Exhibit 61 was prepared during the existence of Dr. Garcia's relationship with the School Board. Thus, Exhibit 61 should be stricken. Furthermore, the remainder of the Garcia memoranda should be stricken because there is absolutely no proof that they were prepared during the existence of Dr. Garcia's relationship with the School Board.

### 2. Dr. Garcia's Memoranda Are Hearsay Because the Statements Made Therein are Not Statements "Concerning a Matter Within the Scope of the Agency or Employment"

To fall within FED. R. EVID. 801(d)(2)(D), a proffered statement must also be "concerning a matter within the scope of the agency or employment." All of Dr. Garcia's memoranda are inadmissible hearsay because the statements therein are not "concerning a matter within the scope of [his] agency . . . ." To the contrary, Dr. Garcia's memoranda are classic "parting shots" designed to (1) paint him in a good light, and (2) smear the Metropolitan Government. Because these statements are not statements "concerning a matter within the scope

of [Dr. Garcia's] agency," however, the memoranda are inadmissible hearsay. Accordingly, they should be stricken.

*Henderson v. General Electric Co.*, 469 F. Supp.2d 2 (D. Conn. 2006), is instructive. In *Henderson*, a former employee sued General Electric under Title VII and 42 U.S.C. 1981, alleging gender discrimination. *Id.* at 10. General Electric filed a motion for summary judgment. In response, Henderson cited her own deposition testimony in which she stated that the former CEO of GE IMV, Antoinette Gawin, told her that James Shepard, President and CEO of GE Digital Energy, "had a problem with women and that her [Gawin's] departure was because she was a woman . . . ." *Id.* at 10. Henderson also cited her deposition testimony in which she stated that the former CFO of GE IMV, Cigdem Kasdan, told her that her removal "was based on the fact that she [Kasdan] was a woman." *Id.* at 11.

GE moved to strike these statements from Henderson's response, arguing that the statements constitute inadmissible hearsay. *Henderson*, 469 F. Supp.2d at 10. Henderson responded that the statements are non-hearsay under Fed. R. Evid. 801(d)(2)(D). The court granted GE's motion to strike, however, reasoning that Gawin and Kasdan's statements about their pending terminations were not related to a matter within the scope of the agency relationship, and thus, did not fall within Rule 801(d)(2)(D):

> Although it is unclear precisely when Gawin and Kasdan made these statements, neither statement qualifies as an admission by a party opponent under Federal Rule of Evidence 801(d)(2)(D) because neither statement relates to a matter within the scope of the agency relationship. *Gawin's comment that she believed that Shepard had a problem with women and Kasdan's remark that her removal was based on the fact that she was a woman do not qualify as statements that Gawin or Kasdan made in their official capacity as GE executives. Rather, they are Gawin's and Kasdan's opinions about the circumstances surrounding their own impending termination, which do not fall within the scope of their agency powers.* Accordingly, these statements, which do not satisfy Federal Rule of Evidence 801(d)(2)(D), shall be stricken as inadmissible hearsay.

*Id.* at 11 (emphasis added).

Dr. Garcia's memoranda are not statements "concerning a matter within the scope of the agency or employment . . . ." They are classic "parting shots" designed to paint Dr. Garcia in a good light and smear the Metropolitan Government. Because these memoranda and the statements therein are not "concerning a matter within the scope of [Dr. Garcia's] agency," they are hearsay. Accordingly, for this additional reason, defendants request that the Court strike any and all iterations of these memoranda.

### 3. Dr. Garcia's Memoranda Should Be Stricken Because They Contain Multiple Layers of Hearsay

Moreover, any purported quotations within Dr. Garcia's memoranda contain at least two layers of hearsay. For example, page two of Plaintiffs' Exhibit 61 states: "Kathy [Neville] indicated Marsha Warden was facing significant pressure from the Hillwood cluster parents to get rid of the African American students presently assigned to that cluster." (Plaintiff's Exhibit 61 at 2). This statement contains at least two layers of hearsay. First, for the reasons discussed above, the memorandum itself is hearsay because it was not prepared during the existence of Dr. Garcia's relationship with the School Board, nor is it "concerning a matter within the scope of [his] employment." Furthermore, Dr. Garcia is relaying an out-of-court statement that Kathy Neville made to him, which plaintiffs are offering for the truth of the matter asserted. This is patent hearsay.

The same analysis applies to all of the purported quotations within Dr. Garcia's memoranda. To the extent Plaintiffs cannot establish that those statements also satisfy a hearsay exception, Dr. Garcia's recitation of what someone purportedly told him is inadmissible hearsay. Accordingly, for this additional reason, these memoranda should be stricken.

### 4. Dr. Garcia's Memoranda Should Be Stricken Because They Contain Speculation and Improper Lay Opinion

Finally, insofar as Dr. Garcia speculates about what motivated the Board and / or its individual members, his memoranda should be stricken.[1]  Generally, a lay witness must confine his or her testimony to a narration of facts based on first-hand knowledge and avoid stating a mere personal opinion. *See Slayton v. Ohio Dept. of Youth Services*, 206 F.3d 669, 676 (6th Cir. 2000).  For this reason, "[c]ourts should generally exclude inquiries that ask non-expert witnesses to pontificate upon legal questions." *Id.* (*citing Mitroff v. Xomax Corp.*, 797 F.2d 271, 276 (6th Cir. 1986) (holding, in an ADEA action, that lay testimony was improper)).  In fact, the Sixth Circuit has stated that it "seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" *Mitroff*, 797 F.2d at 276. Thus, as the Second Circuit Court of Appeals has held, "in an employment discrimination action, Rule 701(b) [of the Federal Rules of Evidence] bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment action." *Hester v. BIC Corp.*, 225 F.3d 178, 185 (2d Cir. 2000) (*quoted in Henderson*, 469 F. Supp.2d at 12 n.6).

On page three of Plaintiff's Exhibit 61, Dr. Garcia states: "I know that the situation I find myself in today, and the pressure exerted upon me by Marsha Warden, is the direct result of my decision to fight against her desire to move the African American children from the Hillwood Cluster so she could be re-elected   Unfortunately, this is a racially-charged issue." *Id.*  This is precisely the type of "naked speculation" that should be excluded as lay opinion testimony.

---

[1] In Section III below, defendants move that the Court strike all such lay opinion testimony as to what motivated the Student Assignment Task Force and / or the School Board.

Accordingly, for this additional reason, defendants move that Dr. Garcia's memoranda be stricken at least insofar as they contain speculation about what motivated the School Board and / or its individual members.

## II. THE COURT SHOULD STRIKE PLAINTIFFS' EXPERT REPORTS AND TESTIMONY BY DRS. TOMMIE MORTON-YOUNG AND LESLIE ZORWICK

Additionally, the Metropolitan Government requests that the Court strike portions of the testimony of plaintiffs' proffered expert witnesses in this case, pursuant to the principles of *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Rule 702 permits expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." But Rule 702 requires expert testimony to satisfy four requirements to be admissible: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the testimony must be based upon sufficient facts or data; (3) the testimony must be the product of reliable principles and methods; and (4) the witness must have applied the principles and methods reliably to the facts of the case.

The Supreme Court has held that Rule 702 imposes a special obligation upon a trial judge to ensure that all expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. *Kuhmo Tire*, 526 U.S. at 147; *Daubert*, 509 U.S. at 592-93. Under *Daubert* and its progeny, the Court acts as a "gatekeeper" to ensure that any proffered expert testimony meets these requirements before it can be deemed admissible. In this case, Drs. Morton-Young and Zorwick's testimony fails to satisfy the requirements of Rule 702, and thus, should be excluded.

### 1. Expert Reports

As an initial matter, the Metropolitan Government moves to strike plaintiffs' Exhibits 122, 132/133,[2] 135, and 136. During the preliminary injunction hearing, plaintiffs tendered the written expert reports of each of their four expert witnesses. But the expert reports are, by definition, inadmissible hearsay. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Moreover, as the Sixth Circuit has recognized, written reports of expert witnesses do not satisfy any exception to the hearsay rule. See, *e.g., Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 479-81 (6th Cir. 2008); *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006). Thus, although plaintiffs' expert witnesses can certainly testify based upon personal knowledge in court to the extent that *Daubert* allows, plaintiffs cannot simply offer their hearsay reports into evidence for the truth of the matter asserted therein.

When undersigned counsel objected to Dr. William Rock's expert report as hearsay, plaintiffs' counsel, responded, "It can't be hearsay, Your Honor, He's present in court." (Trial Tr. Vol. II at 215:1-5). The Federal Rule of Evidence that defines hearsay, however, does not render a declarant's *out-of-court* statement non-hearsay simply because the declarant later testifies in court. In fact, the language of the hearsay definition makes clear that there is no such exemption or exception. The definition states, "'Hearsay' is a statement, other than one made by the declarant *while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c) (emphasis added). If Plaintiffs' counsel's interpretation

---

[2] The record does not indicate whether Dr. Morton-Young's expert report was Plaintiffs' Exhibit 132 or 133. Plaintiffs' counsel tendered the report and Dr. Morton-Young's Curriculum Vitae at the same time as Exhibit 132 and 133 without designating which document was which number. The Metropolitan Government does not seek to exclude Dr. Morton-Young's CV, but simply to strike the expert report, whether Exhibit 132 or 133.

of the definition was correct, the words "while testifying at the trial or hearing" in the Rule would be entirely superfluous. Additionally, an unsworn expert report does not satisfy the requirements for an admissible prior witness statement under Federal Rule of Evidence 801(d)(1). The Federal Rules of Evidence simply do not make a declarant's out-of-court statements non-hearsay simply because the declarant later testifies in court; only the *in-court* testimony (*i.e.*, statement made "while testifying at the trial or hearing") is non-hearsay. Accordingly, the Metropolitan Government moves to strike the expert reports, specifically plaintiffs' Exhibits 122, 132/133, 135, and 136 from the record.

### B. Dr. Tommie Morton-Young

Dr. Tommie Morton-Young's testimony should be stricken because it is not based upon reliable facts or data and will not assist the trier of fact. First, it should be noted that plaintiffs elicited very little actual testimony from Dr. Morton-Young and, instead, appear to rely primarily on Dr. Morton-Young's written expert report. Because the report is hearsay, however, it may not be considered. Furthermore, Dr. Morton-Young's limited testimony should be stricken because it will not assist the trier of fact. (*See generally* Trial Tr. Vol. II at 275-80). Dr. Morton-Young offered a few generalized and speculative beliefs about what children or parents probably thought about the rezoning plan (275:15-20; 276:8-11; 276:17-277:5), what "neighborhood schools" means (*id.* at 277:12-20; 278:14-17), and the purpose behind "school choice" (*id.* at 277:21-278:13). Apart from testimony about her credentials and the literature on which she relied for her opinions, Dr. Morton-Young's direct examination spanned a mere five pages of typed transcript. Her testimony simply will not assist the trier of fact, and accordingly, should be excluded under *Daubert*.

To cite additional specific examples, Dr. Morton-Young described what she perceived to be the "effects of the Nashville rezoning plan." Specifically, she testified that the effect of the plan was "to isolate children in already depressed neighborhoods" and "to impact their motivations and inspirations." (Trial Tr. Vol. II at 275:15-276:14). But Dr. Morton-Young offered no factual basis, or even explanation, for these assertions. Similarly, while Dr. Morton-Young testified about purported "conflict among groups," she provided no basis or foundation for such testimony. (*Id.*).

Finally, Dr. Morton-Young's opinion that "neighborhood schools" equates to "segregated schools" is likewise unreliable and inadmissible. (*See generally* Trial Tr. Vol. II at 290:22-291:1; 291:10-16; 291:21-292:3). Dr. Morton-Young concluded that "neighborhood schools" equates to "segregated schools" based solely on the historical treatment of African-American students in the education system. (Trial Tr. Vol. II at 291:21-292:3). Such testimony is unreliable and, in the absence of any specific connection to this case, does not assist the trier of fact.

For these reasons, the Metropolitan Government moves to strike these portions of Dr. Morton-Young's testimony. (Trial Tr. Vol. II at 275:15-276:14; 290:22-291:1; 291:10-16, 21-292:3.)

### C. Dr. Leslie Zorwick

Defendants move to strike Dr. Leslie Zorwick's testimony because it is purely hypothetical and does not assist the trier of fact in determining any issue in this case. Thus, as outlined in more detail below, the bulk of Dr. Zorwick's testimony should be stricken pursuant to *Daubert* principles.

At the outset, it is worth noting that Dr. Zorwick testified repeatedly that she was not opining about any individual defendant in the case, nor was she testifying about the intent of the drafters of the rezoning plan or the legislators who adopted the plan. (Trial Tr. Vol. III at 357:19-22; 375:19-21; 383:21-23). She also acknowledged that she had not conducted any individualized review of the Board Members' motivations. (Trial Tr. Vol. III at 384:11-13). Rather, Dr. Zorwick merely provided a generalized overview of literature in her field, without any specific connection to the facts of this case. Because she failed to apply the principles and methods from her field to the facts of this case, however, her testimony does not satisfy the requirements under *Daubert*.

More specifically, Dr. Zorwick offered testimony on several topics that should be stricken. The first was her testimony regarding "white flight." (Trial Tr. Vol. III at 364:13-365:14). In this portion of the testimony, Dr. Zorwick spoke generally about white families not returning to the school system following a shift to neighborhood schools. This testimony is irrelevant and will not assist the trier of fact for two different reasons. First, this is one area in which Dr. Zorwick explicitly testified that she was not opining about the Metropolitan Nashville Public School system specifically. (Trial Tr. Vol. III at 392:12-19; 393:3-7). Thus, there is no nexus to this case. Second, there was no evidence at the preliminary injunction hearing that the new rezoning plan had anything to do with "white flight." Because this portion of Dr. Zorwick's testimony is irrelevant and will not assist the trier of fact, defendants move to strike it from the record. (Trial Tr. Vol. III at 364:13-365:14).[3]

Dr. Zorwick also testified at length about stereotyping and the use of what she termed "code words." (Trial Tr. Vol. III at 367:7-368:10; 369:17-372:18). But as discussed above, Dr.

---

[3] As discussed in defendants' pre-hearing *Daubert* motion, this topic is addressed in Opinions 5 and 6 of Dr. Zorwick's report. (*See* Memo. of L. at 8-9, Docket No. 86).

Zorwick acknowledged that she was not opining about any individual defendant in the case, nor was she testifying about the intent of the drafters of the rezoning plan or the legislators who adopted the plan. (Trial Tr. Vol. III at 357:19-22; 375:19-21; 383:21-23). Thus, her discussion of "code words" and stereotyping is purely hypothetical. Moreover, Dr. Zorwick recognized that people may sometimes rely on stereotypes without even being aware of such reliance. (Trial Tr. Vol. III at 380:9-11). This hypothetical possibility, absent any individualized assessment of the individuals whose intent is at issue in this case, simply fails to satisfy the standards outlined by *Daubert* and its progeny.

In fact, the only term that Dr. Zorwick discussed that came up at trial was the term "at risk." But Dr. Zorwick conceded that there are a number of legitimate definitions of "at risk" that do not refer to race. (Trial Tr. Vol. III at 390:25-391:6). Thus, Dr. Zorwick's purely hypothetical testimony regarding what "at risk" – or any other "code word," for that matter – "might" mean does not assist the trier of fact in this case and fails to satisfy *Daubert* principles.[4] Defendants, therefore, move to strike this portion of Dr. Zorwick's testimony. (Trial Tr. Vol. III at 367:7-368:10; 369:17-372:18).

Dr. Zorwick's testimony about stereotyping suffers from an additional flaw as well. In her expert report and during the hearing, Dr. Zorwick stated that politicians are more likely to use code words or try to mask racist attitudes. (Trial Tr. Vol. III at 371:18-372:18; *see discussion* in Memo. of L. at 11-12, Docket No. 86). She also testified about a concept called "aversive racism," wherein individuals attempt to articulate race-neutral ways to justify race-based policies. (Trial Tr. Vol. III at 372:22-374:16). But again, Dr. Zorwick failed to link this opinion to the facts of this case. Dr. Zorwick conducted no individualized assessment of the

---

[4] As discussed in defendants pre-hearing *Daubert* motion, this topic is addressed in Opinions 7 and 8 of Dr. Zorwick's report. (*See* Memo. of L. at 9-10, Docket No. 86).

relevant decisions in this case, much less the decisionmakers. And Dr. Zorwick's own testimony makes clear that it would be inappropriate to draw conclusions about an individual based solely on the individual's inclusion in a particular subset of the population (e.g., politicians) or because others in similar circumstances may have improper motives. In fact, for Dr. Zorwick's testimony about stereotyping to become relevant would require the trier of fact to do the very thing that Dr. Zorwick criticizes – *stereotype*. This testimony fails to satisfy *Daubert* principles, is not relevant to the intent behind this rezoning plan in particular, and should be stricken from the record. (Trial Tr. Vol. III at 371:18-372:18; 372:22-374:16).[5]

Finally, Dr. Zorwick testified about a concept called "moral credentials," specifically in the context of someone allegedly saying "some of my best friends are black." (Trial Tr. Vol. III at 368:11-369:16). This portion of her testimony is irrelevant, however, because no one at the preliminary injunction hearing testified that someone made the statement "some of my best friends are black." In fact, the only person who testified about any even arguably similar statement was Jerry Maynard, who discussed statements made by Mike Turner regarding African-American individuals having dinner at his home. When asked what he thought about

---

[5] By extension, a portion of Walter Searcy's testimony should be stricken as well. (Trial Tr. Vol. III at 428:23-430:1). Plaintiffs' counsel asked Mr. Searcy to identify whether he heard anyone use what Mr. Searcy considered to be a "code word." (*Id.* at 428:23-429:1). Mr. Searcy's subsequent response to that question was improper lay opinion. There is simply nothing in the record to establish that Mr. Searcy is qualified to determine what is and is not a "code word." Regardless of whether Dr. Zorwick's testimony satisfies other *Daubert* criteria, her credentials are not being challenged. And her testimony makes clear that only someone with the proper expertise can opine about what might or might not be a "code word." (Trial Tr. Vol. III at 393:19-394:15).

The purported "code words" that Mr. Searcy identified were not referenced by Dr. Zorwick at all in her preliminary injunction hearing testimony or her written report. (*See* Zorwick Report, Docket No. 85-5; Trial Tr. Vol. III at 355:6-416:8). Mr. Searcy's conjecture about what may or may not have been "code" is irrelevant, constitutes improper lay opinion, and should be stricken from the record. (Trial Tr. Vol. III at 428:23-430:1).

those statements, however, Mr. Maynard responded that he "wasn't offended because [he] kn[ew] Mike." (Trial Tr. Vol. III at 483:15). Mr. Maynard also testified that he had known Mr. Turner for awhile and that he "consider[ed] him a friend." (*Id.* at 485:19-22). And in response to a direct question about whether he believed Mr. Turner to have had a discriminatory purpose in making the statement, Mr. Maynard merely stated, "I perceived Mike Turner to be a proponent of smaller neighborhood schools." (*Id.* at 486:1-5).

Dr. Zorwick's opinion regarding moral credentials simply does not assist the trier of fact in this case where no such comments were made and the only person who even heard remotely similar comments considered the comments to be harmless and not made with any discriminatory purpose. Dr. Zorwick's opinion about the meaning of one isolated statement by one member of the Community Task Force that unanimously recommended the rezoning plan is not based upon reliable data and is not the product of reliable principles and methods.[6] Therefore, this portion of Dr. Zorwick's testimony should be stricken as well. (Trial Tr. Vol. III at 368:11-369:16).

For the foregoing reasons, the Metropolitan Government moves to strike these portions of Dr. Zorwick's testimony from the record. (Trial Tr. Vol. III at 364:13-365:14; 367:7-372:18; 372:22-374:16; 428:23-430:1).

---

[6] As discussed in the Metropolitan Government's pre-hearing *Daubert* motion, this topic is addressed in Opinion 9 of Dr. Zorwick's report. (*See* Memo. of L. at 10-11, Docket No. 86).

## III. THE COURT SHOULD STRIKE SPECULATION AND LAY OPINION TESTIMONY ABOUT WHAT MOTIVATED THE STUDENT ASSIGNMENT TASK FORCE AND / OR THE BOARD OF EDUCATION

As discussed above, generally, a lay witness must confine his or her testimony to a narration of facts based on first-hand knowledge and avoid stating a mere personal opinion. *See Slayton*, 206 F.3d at 676. Thus, as the Second Circuit Court of Appeals has held, "in an employment discrimination action, Rule 701(b) [of the Federal Rules of Evidence] bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment action." *Hester*, 225 F.3d at 185.

Nevertheless, several of the witnesses in this matter offered their lay opinions as to (1) the Student Reassignment Task Force's motivations in creating the rezoning plan, and (2) the Board of Education's motivation in adopting the rezoning plan. For example, former Board Member George Thompson testified that he thought "the focus, the motive, was to get the African American students out of the Hillwood cluster and dump them back in North Nashville." Trial Tr. Vol. I at 163:4-15; *see also* Trial Tr. Vol. III at 428:23-430:1 (Walter Searcy testimony regarding the use of "code words").

Mr. Thompson's testimony about what he believes motivated the five members of the School Board who voted for the plan is the type of "naked speculation" that the Court should exclude as improper lay opinion. The only witnesses in a position to say what motivated the five Board Members who voted for the plan are the five Board Members. Similarly, the only witnesses in a position to say what motivated the Task Force are the 10 members of the Task Force. Accordingly, defendants respectfully requests that the Court strike any and all lay opinion

testimony – from Mr. Thompson's testimony, and from the testimony of any other witness who attempted to speculate about the motivations of the Task Force and / or the Board.[7]

## IV. THE COURT SHOULD STRIKE THE PLAINTIFFS' DEPOSITION TESTIMONY AND THE DEPOSITION TESTIMONY OF THEIR EXPERT WITNESSES

At various points throughout the trial, defense counsel impeached the plaintiffs with their deposition testimony. Plaintiffs' counsel then moved that the entire deposition transcript be filed, and presumably, that it become part of the record. To the extent that plaintiffs seek to rely on their deposition testimony, it is inadmissible hearsay. Furthermore, insofar as plaintiffs seek to rely on their experts' depositions, that too is inadmissible hearsay. Accordingly, defendants request that the Court strike the plaintiffs' deposition testimony and the deposition testimony of plaintiffs' experts. See, e.g., Trial Tr. Vol. I at 68:1-15.

## V. CONCLUSION

Defendants move to strike four categories of documents and testimony from the record of this matter. First, defendants move to strike any and all iterations of Dr. Pedro Garcia's memoranda. These memoranda contain multiple layers of hearsay and constitute inadmissible lay opinion. Second, defendants move to strike plaintiffs' expert witness reports, as well as portions of testimony by Drs. Tommie Morton-Young and Leslie Zorwick. The reports themselves are inadmissible hearsay. Furthermore, the challenged portions of Drs. Morton-Young and Zorwick's testimony do not satisfy the "relevance" and "reliability" principles established by *Kuhmo*, *Daubert*, and Federal Rule of Evidence 702. Third, defendants move to strike speculation and lay opinion about what motivated the Student Assignment Task Force and

---

[7] Similarly, defendants move to strike Won Choi's testimony about a conversation he had with current School Board member Sharon Gentry. (Trial Tr. Vol. IV at page 526:22-527:13). Ms. Gentry was not a member of the Board at the time of the vote and her statements regarding the plan are irrelevant.

/ or the Board of Education. And finally, defendants move to strike plaintiffs' depositions and plaintiffs' expert depositions because the testimony therein is inadmissible hearsay, at least insofar as it is offered by plaintiffs.

For these reasons, and as discussed in more detail above, defendants respectfully request that the Court strike the foregoing categories of documents and testimony from the record of this matter.

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
Sue B. Cain, #9380, Director of Law

s/ Kevin C. Klein
Kevin C. Klein, #22301
Keli J. Oliver, #21023
James W.J. Farrar, #22782
Allison L. Bussell, #23538
Elizabeth A. Sanders, #23873
Assistant Metropolitan Attorneys
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341

**Certificate Of Service**

  I hereby certify that a copy of the foregoing has been sent via the CM/ECF electronic filing system, on this 16th day of February, 2010 to:

Larry D. Woods
Allen N. Woods II
Michael S. Lottman
707 18th Avenue South, Ste. 9
P.O. Box 128498
Nashville, TN 37212

            s/ Kevin C. Klein
            Allison L. Bussell