IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FRANCES SPURLOCK, et al , | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-00756 |
| | ) | SHARP/BRYANT |
| DAVID FOX, et al, | ) | |
| | ) | |
| Defendants. | ) | |

To: The Honorable Kevin H. Sharp, District Judge

**REPORT AND RECOMMENDATION**

**I. Introduction**

By order entered May 9, 2011 (Docket Entry No. 178), this matter was referred to the undersigned for case management and to recommend ruling on any dispositive motions.

On August 31, 2009, plaintiffs filed their initial complaint in this proceeding. (Docket Entry No. 1). Between that time and November 2, 2009, plaintiffs amended the complaint three times, once under FED. R. CIV. P. 15 (a)(1) as a matter of course, (Docket Entry No. 34), and twice by motion and leave of the Court. (Docket Entry Nos. 89, 94).

On June 30, 2011, plaintiffs filed a motion to amend their complaint for a fourth time. (Docket Entry No. 189). Defendants filed a response in opposition on August 2, 2011, (Docket Entry No. 203), to which plaintiffs replied on August 11, 2011. (Docket Entry No. 206). As further explained below, the undersigned recommends that plaintiff's motion to amend be GRANTED IN PART and DENIED IN PART.

1

## II. Procedural Background

Plaintiff's fourth amended complaint ("amended complaint") arises from a preliminary injunction hearing, conducted by the Senior District Judge roughly two years ago. In their motion to amend, plaintiffs note that they "seek to update their claims to reflect issues and facts from the court testimony in this case; to further respond to the pending motions in this case; and to update actions and inactions taken by the school board since the filing of the lawsuit." (Docket Entry No. 189 ¶ 4).

The Court has granted plaintiffs leave to amend on three previous occasions. The first time, plaintiffs amended their complaint to add allegations concerning (1) the failure of the school district to provide books and other educational resources to its majority black schools; (2) additional evidence of improper racial motives behind the district's rezoning plan; and to add several additional named plaintiffs. (Docket Entry No. 34). Because plaintiffs proposed this amendment prior to any answer or dispositive motion being filed, it was granted as a matter of course under FED. R. CIV. P. 15(a)(1). All told, the first amendment more than doubled the length of the complaint, taking it from 48 numbered paragraphs to 108 numbered paragraphs.

The second and third amendments were considerably shorter. The second amended complaint added statistical information concerning (1) enrollment in various district schools by race; (2) Tennessee school achievement test results by school; and (3) the percentage of students receiving free or reduced lunches by school, and also provided additional facts relating to the district's alleged racial motives underlying its rezoning plans. (Docket Entry No. 89-2). The third amended complaint, in turn, added several statements from then Director of Schools, Pedro Garcia, relating to the rezoning plan. (Docket Entry No. 94-2).

On June 30, 2011, plaintiffs filed their fourth and current motion to amend. (Docket Entry 189). Unlike amendments one through three, this amended complaint would replace, rather than supplement, plaintiffs' original filing.

Aside from minor formatting changes,[1] new material in the amended complaint falls into two basic categories: (1) new factual statements and assertions, purportedly bolstering plaintiff's existing claims, and (2) new causes of action – presented as separate and independent "counts" against defendants.[2]

### III. Legal Analysis

A. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) instructs courts to freely allow amendments to pleadings "when justice so requires." In 1962, the Supreme Court explained that the decision whether to grant or deny a motion to amend is within the sound discretion of the trial judge, but that the judge should typically allow the amendment unless there are good reasons not to – reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

---

[1] For example, the fourth amended complaint includes headings such as "Introduction," "Jurisdiction," "Plaintiffs," and "Defendants" that were not present in the original complaint.

[2] Unfortunately, plaintiffs' original complaint did not clearly distinguish its claims against the defendants or break them down into separate numbered counts. This ambiguity makes it more difficult for the undersigned to determine which of the "counts" in plaintiff's current amended complaint are truly new and which ones simply restate existing claims for relief from the original complaint or the prior amendments.

Under the Magistrate Act, 28 U.S.C. § 636 and FED. R. CIV. P. 72, magistrate judges have authority to enter orders on non-dispositive motions, but only to recommend disposition on dispositive ones. Federal courts have typically characterized motions to amend as non-dispositive and well within the scope of the magistrate judge's order power. See Hall v. Norfolk S. Ry. Co., 469 F.3d 590, 595 (7th Cir. 2006) ("The district judge correctly held that the magistrate judge's denial of [plaintiff's] motion to amend his complaint was non-dispositive, subject only to review for clear error."); Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778, 783 (E.D.N.C. 2011) ("[A] motion for leave to amend may be submitted to a magistrate judge for decision under Rule 72(a), rather than for findings and recommended disposition."). But see HCC, Inc. v. R H & M Mach. Co., 39 F. Supp. 2d 317, 321-22 (S.D.N.Y. 1999) (noting the disagreement among different courts on this issue, before ultimately concluding that "denial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility.").

In this case, however, the undersigned chooses to enter a Report and Recommendation rather than a binding order. Defendants oppose plaintiffs' motion to amend partially on the basis of "futility" – arguing that the Court should reject plaintiffs' amendments because they fail to state a claim upon which relief can be granted. (Docket Entry No. 203 at 8-14). The Magistrate Act explicitly forbids magistrate judges from "determin[ing]" motions to dismiss for failure to state a claim. 28 U.S.C. § 636 (b)(1)(A). Therefore, in an abundance of caution and out of respect for the limits imposed by the Magistrate Act and Article III of the Constitution, the undersigned presents the findings below as a recommendation rather than an order.

### B. Analysis of the Motion

Defendants oppose plaintiffs' motion to amend on grounds that (1) the amended complaint would be "futile," since any new claims would ultimately be dismissed as a matter of law, and (2) the amended complaint would unduly prejudice the defendant. The undersigned will address each of these arguments in turn.

### a. Futility

The Foman Court specifically noted that "futility of amendment" was proper grounds for denying a motion to amend. 371 U.S. at 182. The Sixth Circuit has further explained that "the district court may deny a motion for leave to amend a complaint if such complaint, as amended, could not withstand a motion to dismiss." Neighborhood Dev. Corp. v. Advisory Council on Historic Pres., 632 F.2d 21, 23 (6th Cir. 1980).

Here, defendants assert two distinct futility arguments. First, they assert that "plaintiffs' allegations specific to the Pearl-Cohn cluster" are futile because they fail to cure the deficiencies in the original, operative complaint and therefore fail to state a claim upon which relief can be granted.[3] (Docket Entry No. 203 at 8). Specifically, defendants contend that plaintiffs cannot adequately allege that the 2008 zoning plan actually *caused* the segregation plaintiffs allege, and that the claims therefore fail as a matter of law. (Id.) This argument is not well taken.

In its own response in opposition to the motion to amend, defendants concede that counts I through III of the amended complaint "largely reiterate the claims the named plaintiffs have maintained throughout the pendency of this two-year litigation." (Id. at 6). Defendants, in other

---

[3] The undersigned proceeds on the assumption that defendants are referring here to counts I through III of the amended complaint. (See Docket Entry No. 189-1 ¶¶ 99-101).

words, do not argue that counts I through III are futile "as amended," but that those causes of action have been futile *all along*. To the extent that defendants even address the amended versions of these counts, it is to assert that they "fail to cure the fundamental flaw in plaintiffs' original claims." (Id. at 8). This line of reasoning wrongfully conflates the concepts of "futility" and "failure to cure."

Typically, courts will deny a party's motion to amend for failure to cure only when that party is on notice that its claims are legally deficient. See Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1021 (7th Cir. 1992) (noting that plaintiff "had fair notice of its pleading deficiencies from the defendants' motion to dismiss, but it chose to ignore that warning"); Denny v. Barber, 576 F. 2d 465, 471 (2d Cir. 1978) (noting that the trial judge, "in dismissing the initial complaint, had put plaintiff's counsel on the plainest notice of what was required"). The record here reflects no such notice. While the undersigned is aware that defendants filed a 12(b)(6) motion to dismiss over two years ago, (Docket Entry No. 77), the Court never ruled on that motion, and it was ultimately withdrawn without prejudice. (Docket Entry No. 187). Since the Court did not address the adequacy of plaintiffs' complaint at that time, and since the motion to dismiss was subsequently withdrawn, it would be unfair to find that plaintiffs had any notice of deficiency. If defendants wish to challenge the merits of plaintiffs' original claims again, the proper approach would be to file another motion to dismiss under Federal Rule 12(b)(6), not to bootstrap those arguments onto defendants' objection to the motion to amend.

Defendant's second futility argument is that counts IV through IX of the amended complaint are futile because the Court would have to dismiss them for lack of standing under Federal Rule 12(b)(1). (Docket Entry No. 203 at 10-14). Unlike defendants' first futility

6

argument, this objection is well taken.

It has long been settled that Article III of the U.S. Constitution limits federal court jurisdiction to cases and controversies, a limitation that in turn requires the party seeking relief to establish standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). The Supreme Court has emphasized that a plaintiff cannot establish standing simply by showing that a defendant's conduct will injure *someone*. Blum v. Yaretsky, 457 U.S. 991, 999 (1982). Instead, the plaintiff must show that he "is within the class of persons who will be concretely affected." Id.

According to the amended complaint, the three sets of named plaintiffs in this action are (1) Frances and Jeffrey Spurlock and their minor daughter – a student attending Bellevue Middle School in the Hillwood cluster at the time this suit commenced; (2) Carroll Lewis and her minor granddaughter – a student attending John Early Middle School in the Pearl-Cohn cluster at the time this suit commenced; and (3) Tennessee Alliance for Progress, a Tennessee not-for-profit organization. (Docket Entry No. 189-1 ¶¶ 3-11).

Defendants assert that none of these plaintiffs have standing to seek relief under counts IV through IX of the Amended Complaint. (Docket Entry No. 203 at 10-14). Specifically, defendants assert that: **count IV** relates to segregation at "McGavock and other clusters," which, if true, does not specifically injure any named plaintiff; **counts V, VI, and VII** relate to conditions at the district's enhanced option schools, "special schools," "thematic" magnet schools, and charter schools – schools that no named plaintiff attends or sought to attend; **count VIII** relies on allegations in counts IV through VII, and **count IX** makes no specific allegation that any named plaintiff has been deprived of an equal educational opportunity on account of

7

race. (Docket Entry No. 203 at 12-13). The undersigned agrees with defendants with respect to counts IV, V, VI and VII. The undersigned also agrees with defendants' conclusions regarding counts VIII and IX, but disagrees with their reasoning.

*1. Counts IV, V, VI and VII*

Plaintiffs, in their reply to defendants' response in opposition, assert that defendants have confused the issues of constitutional standing and rule 23(a)(3) "commonality." (Docket Entry No. 206 at 10). Specifically, plaintiffs claim that:

> The point defendants are trying to raise is commonality: that the named plaintiffs, simply put cannot assert the claims of class members in racially isolated enhanced option schools, in magnet schools that once may have been intended to facilitate diversity but are now mostly segregated or racially isolated, or in charter schools that have started out in Nashville on a racially isolated basis, because the named plaintiff children have not personally attended those schools.

(Id. at 10-11) (internal citation omitted).

Plaintiffs, however, misconstrue both the defendants' argument and the constitutional requirements for standing. The Supreme Court has emphasized that "'a plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' that is sought," Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006)), and the Sixth Circuit has similarly noted that "it is black-letter law that standing is a claim-by-claim issue." Rosen v. Tenn. Comm'r of Fin. & Admin., 288 F.3d 918, 928 (6th Cir. 2002). Therefore, independent of any dispute over the commonality of class members, plaintiffs must demonstrate that at least one named plaintiff has standing to raise *each claim* asserted against the defendants. See, e.g., Prado-Steinman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000) ("[P]rior to the certification of a class, and

8

technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."). From the record, plaintiffs cannot establish standing under counts IV, V, VI or VII.

Plaintiffs do not claim that minor plaintiffs Spurlock or Lewis ever attended a school in the McGavock cluster, or one of the unnamed "other" clusters outside of the Pearl-Cohn and Hillwood clusters, leaving them and their parents without standing to bring count IV of the amended complaint. See Citizens Concerned About Our Children v. Sch. Bd. of Broward County, Fla., 193 F.3d 1285, 1290 (11th Cir. 1999) ("While it is plain that the plaintiffs have standing to complain of allegedly race-based differences in physical plant and programs that they have personally experienced, they cite no law permitting them to complain of race-based disadvantages experienced only by other people."). With regard to counts V, VI and VII – addressing "enhanced option" schools, special schools, magnet schools, and charter schools – plaintiffs seek to demonstrate standing by noting that each named minor plaintiff "is subject to being induced to attend a 'thematic' magnet school, or perhaps even a charter school that could turn out as others have to be racially isolated or nearly so." (Docket Entry No. 206 at 10). Plaintiffs are simply speculating here, and the possibility that minor plaintiff Spurlock or minor plaintiff Lewis *might* someday attend an unspecified magnet or charter school, that *might* turn out to be racially segregated is certainly not the type of concrete, particularized injury necessary to confer standing.

The Tennessee Alliance for Progress also lacks standing to bring counts IV, V, VI or VII. The Supreme Court has explained that an association has standing to sue (1) when it has

9

suffered an injury to itself as an organization, or (2) when it seeks to vindicate the rights of its members. Warth v. Seldin, 422 U.S. 490, 511 (1975); see also ACLU of Ohio Foundation, Inc. v. Ashbrook, 375 F.3d 484, 488-89 (6th Cir. 2004). Such representational standing, however, requires the organization to "allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth, 422 U.S. at 511. The Tennessee Alliance for Progress has made no such allegation.

The fourth amended complaint identifies the Alliance as a not-for-profit organization and mentions that the Alliance "was co-sponsor and organizer of the community forum in North Nashville (the Pearl/Cohn schools cluster area) to educate the community regarding the segregationist effects of the rezoning plan." (Docket Entry No. 189-1 ¶ 11). The amended complaint does not allege that the Tennessee Alliance for Progress has suffered any direct injury. Furthermore, since it is unclear from the record who the members of the Alliance are, the organization cannot establish standing under counts IV, V, VI or VII in any representative capacity.

Accordingly, the undersigned recommends that plaintiffs' motion to amend be DENIED with respect to counts IV, V, VI and VII – corresponding to paragraphs 102 through 109 of plaintiffs' proposed fourth amended complaint. (Docket Entry No. 189-1).

### 2. Counts VIII and IX

Count VIII of the Amended Complaint states, in pertinent part, that defendants' actions

10

Case 3:09-cv-00756 Document 224 Filed 12/08/11 Page 10 of 14 PageID #: 5799

in developing and implementing the re-zoning plan were "racially motivated, in violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment, thus supporting a finding that defendants are operating a dual school system on the basis of race." (Docket Entry No. 189-1 ¶ 110). Similarly, count IX states, in pertinent part, that defendants "are knowingly depriving the black students in their charge of an equal educational opportunity on the basis of race, as compared to white students in the district." (Id. ¶ 112).

Unlike counts IV through VII – and contrary to defendants' assertion – plaintiffs *do* appear to have standing to sue under counts VIII and IX. There is no question that minor plaintiffs Spurlock and Lewis are black students in the Metro public school system. Therefore, if defendants are in fact depriving black students in the district of equal educational opportunity, such actions would give rise to concrete, particularized injuries against the plaintiffs.

But leave to amend should still be denied for count VIII and count IX. Because there seems to be some confusion on this point, the undersigned wishes to emphasize that a "count," as commonly understood in the legal community, is "the plaintiff's statement of a cause of action; *a separate and independent claim.*" BLACK'S LAW DICTIONARY 348 (6th ed. 1991) (emphasis supplied). From the language of the amended complaint, counts VIII and IX not only prove substantively duplicative of one another, but also duplicative of count II, which accuses defendants of acting "intentionally and for the unlawful purpose of segregating, isolating, and maintaining black and other minority students in certain schools and clusters (sub-districts), in violation of the Equal Protection and Due Process clauses of the Fourteenth Amendment." (Docket Entry No. 189-1 ¶ 100).

While Federal Rule 15(a) instructs trial courts to freely grant leave to amend "when

11

justice so requires," plaintiffs have provided no explanation for why justice "requires" that the Court permit them to amend their complaint to restate the same substantive claim in several different ways. Because counts VIII and IX are needlessly duplicative of other claims against defendants, the undersigned concludes that the counts would be subject to dismissal under Rule 12. See Freedom Mortg. Corp v. Burnham Mortg., Inc., 720 F. Supp. 2d 978, 992 (N.D. Ill. 2010) ("It is well-settled that duplicative counts in a complaint may be properly dismissed.") (quoting DeGeer v. Gillis, 707 F. Supp. 2d 784, 795 (N.D. Ill. 2010)); Wultz v. Islamic Republic of Iran, 755 F. Supp. 2d 1, 81 (D.D.C. 2010) ("As a matter of judicial economy, courts should dismiss a claim if it is duplicative of another claim in the same suit."); City of Moundridge v. Exxon Mobil Corp., 250 F.R.D. 1, 7 n.7 (D.D.C. 2008) ("[O]ffering a duplicative amendment can be grounds for denying leave to amend.").

Accordingly, the undersigned recommends that plaintiffs' motion to amend be DENIED with respect to counts VIII and IX – corresponding to paragraphs 110 through 112 of plaintiffs' proposed fourth amended complaint. (Docket Entry No. 189-1).

### b. Prejudice to Defendants

As a separate argument, defendants assert that allowing plaintiffs to amend their complaint again would be unduly prejudicial. In light of the above analysis and recommendation, however, this argument appears largely moot. Defendants' prejudice arguments are directed primarily at plaintiffs' attempts to add counts IV through IX to their complaint. (See Docket Entry No. 203 at 15 ("[P]laintiffs' motion to amend should be denied because plaintiffs waited nearly two years to attempt to add Counts IV to IX.")). To the extent

12

defendants object to any portions of plaintiffs' amended complaint other than the numbered counts, it is merely to note that the amendments "reiterate[] plaintiffs' skewed version of the evidence presented during the November 2009 preliminary injunction hearing." (Id. at 1). Even accepting this claim as true, such an objection would hardly suffice to overcome the liberal standards for amendment under FED. R. CIV. P. 15(a).

Accordingly, finding no undue prejudice in plaintiffs' remaining amendments, the undersigned recommends that plaintiffs' motion to amend be GRANTED with respect to paragraphs 1 through 101, and with respect to plaintiffs' prayer for relief (Docket Entry No. 189-1 at 71-81).

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiffs' motion to amend be GRANTED with respect to paragraphs 1through 101, DENIED with respect to paragraphs 102 through 112, and GRANTED with respect to the amended prayer for relief.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 8th day of December, 2011.

13

s/
JOHN S. BRYANT
United States Magistrate Judge