UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FRANCES SPURLOCK AND JEFFREY SPURLOCK, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) No. 3:09-cv-00756 |
| v. | ) ) JUDGE SHARP |
| DAVID FOX, *et al.*, | ) MAGISTRATE JUDGE BRYANT ) |
| Defendants. | ) |

## MEMORANDUM

Presently before the Court is Plaintiffs' motion for class certification (Docket Entry No. 246), to which Defendants filed a response (Docket Entry No. 253) and Plaintiffs filed a reply (Docket Entry No. 255). For the reasons stated below, the Court will grant Plaintiffs' motion and certify the class.

## FACTS

Concisely summarized, this action challenges the constitutionality of the re-zoning plan for the Metropolitan Nashville Public Schools ("MNPS"). The Metropolitan Board of Public Education first implemented the re-zoning plan at the beginning of the school year in August 2009. Plaintiffs Frances and Jeffrey Spurlock and Carroll Lewis ("Plaintiffs") each have a dependent enrolled in MNPS whose school assignment was affected by the re-zoning plan. Plaintiffs allege that the re-zoning plan assigned (or reassigned) students on the basis of race to exacerbate racial segregation in MNPS and deprive African-American students of equal educational opportunities.

1

MNPS is divided into sub-districts, or "clusters," and students generally attend a school within their geographical cluster. Prior to the re-zoning plan, however, students living in certain predominantly African-American areas were required to attend schools outside of their geographical cluster, pursuant to rulings in prior cases involving racial discrimination in Nashville schools. The parties describe these areas as "mandatory non-contiguous transfer zones." Plaintiffs and their dependents resided in one such zone in the Pearl Cohn cluster. Prior to the re-zoning plan, rather than attending a school within their home cluster, Plaintiffs' dependents were assigned to a school in the Hillwood cluster.

The Board of Public Education's re-zoning plan eliminated the mandatory non-contiguous transfer zones and replaced them with "choice zones." The parents and guardians of children living in these zones were allowed to pick between a school in their neighborhood cluster and a school in a different cluster farther away from home. The terms of the re-zoning plan, and not the children's parents or guardians, selected the schools that the parents and guardians were choosing between. So, while Plaintiffs now choose between a school in the Pearl Cohn cluster and a school in the Hillwood cluster, they are limited to the school in each cluster that the re-zoning plan prescribes. Prior to the issuance of a temporary restraining order in this case, the Spurlocks were not allowed to continue sending their daughter to the school she had been attending in the Hillwood cluster. Similarly, the re-zoning plan closed the Hillwood cluster school that Lewis's granddaughter had been attending. When Lewis attempted to move her granddaughter from a Pearl Cohn cluster school to a Hillwood cluster school a few days into the 2009-10 school year, Defendants denied the application for transfer.

The gravamen of Plaintiffs' allegations is that the re-zoning plan pushes African-American students living in the mandatory non-contiguous transfer zones out of racially diverse

2

schools and forces them to choose among academically inferior, racially homogeneous schools. Plaintiffs allege that the re-zoning plan amounts to school assignment on the basis of race, in violation of the federal constitutional guarantees of equal protection and due process, and achieves intentional de jure segregation in the MNPS system.

## ANALYSIS

**I.      Legal Standard**

"The district court maintains substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 559 (6th Cir. 2007) (internal quotation omitted). In exercising that discretion, the Court looks to Federal Rule of Civil Procedure 23, which sets forth a two-pronged analysis to determine the propriety of maintaining a class action. Representative Plaintiffs must show that the factors under 23(a) have been met and that one sub-section of Rule 23(b) is satisfied.

Under Rule 23(a), a party seeking class certification must show that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). A trial court is required to conduct a "'rigorous analysis' of the issues necessary to show that the requirements of Rule 23(a) have been met." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006).

In determining whether Plaintiffs have satisfied the "rigorous" requirements for class certification, a court generally should accept a complaint's allegations as true, although "'sometimes it may be necessary for the court to probe behind the pleadings before coming to

3

rest on the certification question.'" *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). In fact, it is "frequently" the case "that 'rigorous analysis' will entail some overlap with the merits of plaintiff's underlying claim. That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011).

Classes certified under Rule 23(b)(1) and (2) "are referred to as 'mandatory' classes due to the fact that they do not require that a court provide individual members of the class with notice and the opportunity to 'opt out' of the class action." *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002).

For the sake of analytical clarity, the Court will first determine whether Plaintiffs have satisfied one of the Rule 23(b) sub-sections and then proceed to whether Plaintiffs have established the four prerequisites of Rule 23(a). Although Plaintiffs flexibly propose several different class definitions, the Court will focus its analysis on one definition: all African-American students in the Metropolitan Nashville public school system whose school assignment was affected by the elimination of mandatory non-contiguous transfer zones in the 2008 re-zoning plan, and the parents, guardians, or other representatives of such students.

## II. Rule 23(b) Criteria

Plaintiffs contend the Court should certify a class under either of two provisions of Rule 23(b), both quoted below:

> (b) **Types of Class Actions.** A class action may be maintained if Rule 23(a) is satisfied and if:
> (1) prosecuting separate actions by or against individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

4

> . . .
>> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]

Fed. R. Civ. P. 23(b)(1)-(2).

Under (b)(1)(A), "[c]ertification is not appropriate simply because 'some plaintiffs may be successful in their suits against a defendant while others may not,'" but instead requires that "adjudication in separate actions would impair [the defendant's] ability to pursue a uniform course of conduct." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 633 (6th Cir. 2011) (quoting *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984)). It includes those cases where a party is legally obligated to treat class members alike. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *see also Employers Ins. of Wausau v. Fed. Deposit Ins. Corp.*, 112 F.R.D. 52, 54 (E.D. Tenn. 1986) (explaining that (b)(1)(A) protects the nonclass party from "a stalemated or conflicted position" and thus applies "only to actions . . . where the nonclass party could be sued for *different and incompatible affirmative relief*"). Courts have certified (b)(1)(A) classes in equal protection cases where the government agency's course of conduct must be consistent as to all class members. *See, e.g.*, *Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002); *Anderson v. City of Belle Glade*, 337 F. Supp. 1353, 1354 (S.D. Fla. 1971). Applied to this case, (b)(1)(A) certification is appropriate so that Defendants can pursue a uniform course of conduct with respect to their re-zoning plan and are not subject to incompatible judicial determinations regarding the plan's constitutionality.

Turning to subsection (b)(2), this provision "applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores*, 131 S.Ct. at 2557. "Civil rights cases against parties charged with unlawful, class-based

discrimination are prime examples" of (b)(2) class actions. *Amchem Prods.*, 521 U.S. at 614; *Card v. City of Cleveland*, 270 F.R.D. 280, 289 (N.D. Ohio 2010); *see* Fed. R. Civ. P. 23, Advisory Comm. Note, 39 F.R.D. 69, 102 (1966) ("Illustrative [of the (b)(2) class] are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class[.]"). Courts have certified (b)(2) classes in equal protection cases involving racial segregation in school assignments. *See, e.g.*, *D.S. ex rel. S.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, 72-73 (E.D.N.Y. 2008); *McFadden ex rel. McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 2008 WL 4877150, at *6 (N.D. Ill. Aug 8, 2008); *Thomas Cnty. Branch of the Nat'l Assoc. for the Advancement of Colored People v. City of Thomasville Sch. Dist.*, 187 F.R.D. 690, 699-700 (N.D. Ga. 1999). Applied to this case, (b)(2) certification is appropriate because Defendants' re-zoning plan has general application to the class members, and Plaintiffs seek injunctive relief that would provide relief to each class member.

## III. Rule 23(a) Criteria

### A. Numerosity

To establish numerosity, Plaintiffs must demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004). Nevertheless, "[t]here is no strict numerical test for determining impracticability of joinder," and "impracticability of joinder must be positively shown, and cannot be speculative." *Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005) (internal quotations omitted).

Here, Plaintiffs contend that joinder is impracticable because the class numbers in the several thousands. Plaintiffs support this number by pointing to the November 14, 2011 report

6

Case 3:09-cv-00756 Document 304 Filed 04/27/12 Page 6 of 14 PageID #: 8534

of Dr. Leonard Stevens, Defendants' expert witness, which states that a total of 4,204 students currently reside in zoned option areas that were formerly non-contiguous zones with mandatory school assignments.  (*See* Docket Entry No. 243-1, at 8.)  The student population in these zones is more than 90% African-American.  (*Id.* at 6-7.)  The Court concludes that, rather than merely speculate, Plaintiffs have positively shown impracticability of joinder and have satisfied the numerosity requirement.

      **B.**     **Commonality**

To establish commonality, Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(b)(2).  The most recent authoritative statement of the law on commonality is the Supreme Court's 2011 *Wal-Mart Stores* decision.  There, the Court explained:

> claims [of the class] must depends upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

131 S.Ct. at 2551.  Ultimately, the commonality inquiry seeks "'not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Defendants contend Plaintiffs cannot establish commonality because of the principles set forth in *Wal-Mart Stores*.  In that case, the Supreme Court discussed Wal-Mart's practice of committing pay and promotion decisions to local store managers. *Id.* at 2547.  Attempting to certify a class of all female employees for their sex discrimination action, the plaintiffs alleged "a strong and uniform 'corporate culture' permits bias against woman to infect . . . the discretionary

7

decisionmaking of each one of Wal-Mart's thousands of managers[.]" *Id.* at 2548. The Supreme Court reversed the grant of class certification, concluding that Wal-Mart's grant of discretion to local supervisors in pay and promotion decisions "is just the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Id.* at 2554. Plaintiffs' claim failed because they "ha[d] not identified a common mode of exercising discretion that pervades the entire company." *Id.* at 2554-55. Analogizing to this case, Defendants argue that the choice provisions in the re-zoning plan defeat Plaintiffs' ability to show commonality.

The Court finds, however, that this case is factually and legally distinct. Whereas *Wal-Mart Stores* involved the exercise of discretion in each of the allegedly unlawful employment decisions, this case involves allegations of the same conduct toward all the class members: treating students according to their race, forcing them out of integrated schools, and leaving them to enroll in one of several academically inferior, racially homogeneous schools. To the extent that students formerly in mandatory non-contiguous transfer zones now have discretion, Defendants allegedly have uniformly cabined in the exercise of that discretion on racial grounds, in violation of the equal protection and due process guarantees of the federal constitution. The constitutionality of the re-zoning plan—including the choice set presented to African-American students who live in what were formerly mandatory non-contiguous transfer zones and what are now choice zones—is capable of a classwide resolution in this litigation to generate a common answer for the entire class. Therefore, Plaintiffs have satisfied the commonality requirement.

**C.     Typicality**

To satisfy the typicality requirement, Plaintiffs must establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "'[A] plaintiff's claim is typical if it arises from the same event or practice or course of

conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996) (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3-13, at 3-76 (3d ed. 1992)). The typicality inquiry "'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). "'To be typical, a representative's claim need not always involve the same facts or law.'" *Beattie*, 511 F.3d at 561 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)).

Defendants contend the named Plaintiffs do not have claims typical of the putative class in this case. To make this contention, Defendants cite portions of the testimony of Plaintiffs Frances Spurlock and Carroll Lewis from the November 2009 hearing on Plaintiffs' motion for a preliminary injunction. Upon a review of the relevant individuals' entire testimony, however, the Court concludes their claims are typical of the class. Spurlock, an African-American (*see* Docket Entry No. 110, at 49:12-17), has a daughter who was enrolled in Bellevue Middle School. (*Id.* at 41:2-4.) After the re-zoning plan, Spurlock, in her own words, "had the option of putting my child in two failing schools," (*id.* at 57:1-2), one in the Pearl-Cohn cluster and another in the Hillwood cluster. According to Spurlock's testimony, school officials said that she could keep her daughter in the higher-performing Bellevue Middle School only if she provided her own transportation. (*Id.* at 64:15-21.) She maintains that Defendants singled out African-American students for placement in inferior schools on the basis of race. (*See id.* at 58:19—59:18; 67:8-16.)

9

Lewis, also an African-American (Docket Entry No. 110, at 27:12-17), has legal custody of her granddaughter, whose middle school was closed when the re-zoning plan took effect. (*Id.* at 24:10-12; 30:10-20.) Lewis selected a school in the Pearl-Cohn cluster under the mistaken belief that it was a magnet school, but discovered on the first day of school that "[it] was basically just . . . a majority black school." (*Id.* at 24:24—25:2.) At that point, Lewis applied to transfer her granddaughter to the Hillwood cluster school that she had not chosen originally, but Defendants denied that application. (*Id.* at 25:8-21.)

In summary, Spurlock and Lewis bring sufficiently typical claims to represent a class of plaintiffs allegedly forced on the basis of race to attend (or send their dependents to) academically inferior, racially homogeneous schools. Slight differences in the facts among various plaintiffs—*e.g.*, the emphasis that a parent places on academic inferiority versus racial homogeneity—are permissible. The element of choice in the re-zoning plan does not defeat typicality because Plaintiffs maintain that Defendants structured and managed the purported choice in a way that systematically denies equal educational opportunities to all black students living in the choice zones.

### D. Adequacy of Representation

To satisfy the adequacy of representation requirement, Plaintiffs must establish that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In reviewing the adequacy of class representation, the Court "determine[s] whether class counsel are qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another." *Stout*, 228 F.3d at 717; *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 530 (M.D. Tenn. 2010). Regarding the competence of class counsel, the operative pleading sets forth

counsel's substantial experience in civil rights litigation and class actions. Defendants offer no objection to the competence of Plaintiffs' counsel. The Court finds that Plaintiffs' counsel is qualified, experienced, and generally able to conduct this litigation and will appoint Plaintiffs' counsel as counsel for the class.

Defendants contend the named Plaintiffs cannot adequately represent the class because some class members support the re-zoning plan. Named Plaintiffs' interests purportedly conflict with the interests of class members who approve of the defendants' conduct that the named Plaintiffs are challenging. While Defendants' couch their argument as a Rule 23(a) challenge to Plaintiffs' adequacy as class representatives, what actually defeats this argument is the nature of a (b)(2) class. The applicability of the injunction to a re-zoning plan that governs each member of the class

> make[s] Rule 23(b)(2) certification appropriate. "All of the class members need not be aggrieved by . . . [the] defendant's conduct in order for some of them to seek relief under Rule 23(b)(2). What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class." [7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1775 (3d ed. 2005).] "It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate." *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998). "The key to the (b)(2) class is 'the indivisible nature of the injunctive . . . remedy warranted—the notion that the conduct is such that it can be enjoined . . . only as to all of the class members or to none of them.'" *Wal-Mart*, 131 S.Ct. at 2557 (quoting Nagareda, 84 N.Y.U. L. Rev. at 132).

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 (6th Cir. 2012). Because the defendant's conduct must "apply generally to the class" according to the language of the rule:

> the defendant's conduct described in the complaint need not be . . . damaging to every member of the class. Thus, for example, in a constitutional challenge to a . . . segregated public school, the policy is generally applicable to the entire excluded class, though it may be repugnant to a small part of the class and the vast majority of class members may be opposed to any change in policy.

11

2 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, *Newberg on Class Actions* § 4:11 (4th ed.), *available at* Westlaw CLASSACT (updated through November 2011). In the civil rights context, if a law or practice is unconstitutional, the Court must invalidate it even if some affected individuals (including some class members) would like for the law or practice to be upheld. *Berry v. Sch. Dist. of City of Benton Harbor*, 442 F. Supp. 1280, 1287 (W.D. Mich. 1977) (quoting 7 Wright & Miller, *Federal Practice* § 1771). As applied to this case, which challenges the constitutionality of Defendants' re-zoning plan, named Plaintiffs are adequate to represent the class, regardless of whether some members of the class support Defendants' re-zoning plan.

In support of their argument, Defendants cite *Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir. 1997). The *Mayfield* plaintiffs brought a putative class action to challenge the Department of Defense's program of collecting and storing blood and tissue samples from members of the armed forces. *Id.* at 1424. The district court had declined to certify the class, citing the presence within the class of members who approved of the policy's enforcement. *Id.* at 1427. By the time the case reached the court of appeals, the named plaintiffs' claims were moot because they had been honorably separated from active duty without giving any samples. *Id.* at 1425. The Ninth Circuit denied their request for remand to appoint a new class representative because named plaintiffs had failed to show the existence of others who could represent the more limited class of service members who actually opposed the program. *Id.* at 1427.

This Court does not find *Mayfield* persuasive. A review of the underlying district court opinion, s*ee Mayfield v. Dalton*, 901 F. Supp. 300 (D. Haw. 1995), fails to establish that the plaintiffs were seeking to certify a (b)(2) class. In fact, the district court opinion reveals that, in

12

addition to the constitutional challenge, plaintiffs alleged that the sampling program breached their enlistment contracts. *Id.* at 304-05. If plaintiffs were seeking to certify a class that included claims for monetary damages, then certification of a mandatory class, without the procedural protections of class notice and opting out, would become a legally dubious proposition. *See Wal-Mart Stores*, 131 S.Ct. at 2557; Coleman, 296 F.3d at 447-50. In summary, the *Mayfield* decision provides insufficient facts for the Court to conclude that it is analogous to this case.

## IV. Appointment of Class Counsel

As part of the class certification, the Court must appoint class counsel. Fed. R. Civ. P. 23(g)(1). The applicable rule sets forth the following factors for the Court's mandatory consideration:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class[.]

*Id.* 23(g)(1)(A)(i)-(iv).

In this case, attorneys Larry D. Woods and Allen N. Woods, II of Nashville, Tennessee have represented the named Plaintiffs since the inception of this action in August 2009. A few months thereafter, attorney Michael S. Lottman, presently of Kingston Springs, Tennessee, joined in the representation of Plaintiffs. As previously discussed *supra* under the adequacy of representation prong, the operative pleading describes the work counsel has done in this action through June 2011, their experience in complex litigation, and their prior work in civil rights cases that gives them knowledge of the applicable law. (*See* Docket Entry No. 189-1 ¶ 18.) The extent of counsel's preparation for the imminent trial reflects the substantial resources they have

13

already committed to representing the putative class. Accordingly, the Court will appoint the attorneys who have represented Plaintiffs to this point in the litigation as counsel for the class.

## **CONCLUSION**

For the reasons stated herein, the Court will grant Plaintiffs' motion for class certification (Docket Entry No. 246) and will certify the following class:

> all African-American students in the Metropolitan Nashville public school system whose school assignment was affected by the elimination of mandatory non-contiguous transfer zones in the 2008 re-zoning plan, and the parents, guardians, or other representatives of such students.

The Court will appoint attorneys Larry D. Woods, Allen N. Woods, II, and Michael S. Lottman as class counsel. This case remains set for trial to begin on Tuesday, May 1, 2012.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

14

Case 3:09-cv-00756   Document 304   Filed 04/27/12   Page 14 of 14 PageID #: 8542