UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **FRANCES SPURLOCK**, *et al.* ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | No. 3:09-00756 |
| v. ) | Judge Sharp |
| ) | |
| **METROPOLITAN GOVERNMENT OF** ) | |
| **NASHVILLE AND DAVIDSON** ) | |
| **COUNTY**, *et al.* ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM

After Defendants prevailed in this class-action lawsuit alleging racial resegregration in the Nashville Public Schools as a result of the School Board's rezoning plan, Defendants filed a Bill of Costs in the amount of $32,018.99. For the reasons that follow, Defendants' Bill of Costs will be denied.

## I.

Rule 54 of the Federal Rules of Civil Procedure provides that "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). They include, among other things, "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," and "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case[.]" 28 U.S.C. § 1920.

Here, Defendants were clearly the prevailing party for purposes of Rule 54, as they prevailed not only in this Court, <u>Spurlock v. Metro Govt. of Nashville</u>, 2012 WL 3064251 (M.D. Tenn. July 27, 2012), but also on appeal, <u>Spurlock v. Fox</u>, 716 F.3d 383 (6th Cir. 2013), cert. denied, ___ U.S.

1

___, 2013 WL 4101818 (Oct. 15, 2013). Further, the costs they seek to recover, though large, are clearly those contemplated by Section 1920, consisting of transcript costs in the amount of $31,926.71, and copying costs in the amount of $92.98.

Even though costs "are awarded as a matter of course to the prevailing party, Fed. R. Civ. P. 54(d)(1)," Kempter v. Michigan Bell Telephone Co., 2013 WL 4504760 at *2 (6th Cir. Aug. 26, 2013), Plaintiffs request that the Court deny costs because (1) they are indigent; (2) this was a close and difficult case; (3) Defendants included unnecessary and/or unreasonably large expenditures in their Bill of Costs; (4) Defendants were responsible for prolonging the trial and litigation costs because they failed to move for the recusal of the former presiding judge at an earlier time in the proceedings; and (5) Defendants did not consult with opposing counsel as supposedly required by the local rules, prior to filing their Bill of Costs. Having reviewed the record and the arguments of the parties, the Court is unpersuaded by any of the last three arguments. The Court does find, however, that this was a difficult case brought in good faith, and that Plaintiffs do not have the ability to pay costs.

## II.

"[T]he matter of costs is within the sound discretion of the district court, both under the rule and under the settled law." Lindsay v. Pizza Hut of Am., Tricon, Inc., 84 Fed. Appx. 582, 583 (6th Cir. 2003). While there is a presumption that costs will be assessed in light of Rule 54(d)'s "should" language, the Sixth Circuit has "identified several factors a losing party may put forward that may be sufficient to justify a district court in overcoming the presumption in favor of a cost award, including," so far as relevant here, "the losing party's good faith, the difficulty of the case" and "the indigency of the losing party." Singleton v. Smith, 241 F.3d 534, 539 (6th Cir. 2001); see, Knology, Inc. v. Insight Comm. Co., 460 F.3d 722, 728 (6th Cir. 2006).

2

This was indeed a difficult case, involving complex issues of constitutional law, and education policies. See, White & White, Inc. v. Amer. Hosp. Supply Co., 786 728, 732-33 (6th Cir. 1986)) (the difficulty or closeness of a case "is judged not by whether one party clearly prevails over another, but by the refinement of perception required to recognize, sift through and organize relevant evidence, and by the difficulty of discerning the law of the case."). The litigation was protracted, and spanned three years, beginning with the issuance of a Temporary Restraining Order requiring that the Board permit Spurlock's daughter to transfer to Bellevue Middle School and provide textbooks to all sixth-grade students at John Early Middle School. Thereafter, discovery was expedited and a predecessor judge held a preliminary injunction hearing over the course of seven days.

Ultimately, the case was tried to the Court for eleven days, and the trial incorporated the evidence which had been submitted at the preliminary injunction hearing. Many witnesses testified, hundreds of pages of exhibits were admitted, and the transcript of the proceedings exceeded 4,300 pages. After the parties submitted extensive proposed findings and conclusions, the Court issued an 80 page opinion, finding, ultimately, that Plaintiffs could not establish the intent element of their *de jure* segregation case. This conclusion was affirmed on appeal in a 30 page opinion.

Even though Plaintiffs were unsuccessful, it can hardly be said, as Defendants' insist, that "Plaintiffs' claims had no merit." (Docket No. 360 at 3). To the contrary, the sheer length of this Court's decision suggests otherwise, and the Sixth Circuit, while noting it was "not the province of the courts to dictate and supervise local policy," made clear that the student rezoning plan may not have been the elixir that the Board intended:

> Our conclusion that the Rezoning Plan is constitutional, however, should not be understood to be a judicial endorsement of its "success." As the district court

found, the Plan's much-touted neighborhood-school concept "may have thin support in the academic literature." Spurlock, 2012 WL 3064251, at *44. That equivocal finding is not surprising. After all, the notion that children from underprivileged neighborhoods are somehow better off staying in their woefully deprived neighborhood schools—so woefully deprived that the students at John Early Middle School in the Pearl–Cohn Cluster had to share textbooks—instead of attending manifestly superior outside schools, is counterintuitive.

Nor is there any indication in the record that the Rezoning Plan has done much to alleviate problems other than school under-utilization, despite the Rezoning Planss efforts to direct more resources into the racially isolated schools in the District. The racial achievement gap apparently exists much as before. Nor has overall academic performance materially changed. Nashville public-school students as a whole were doing poorly before the Plan and continue to do poorly after the Plan. Finally, the effect on racial and socioeconomic diversity, although not dramatic in one direction or the other, appears to have drifted in the direction of increasing isolation.

In the aggregate, then, the Plan seems to have achieved a modest measure of success in improving school utilization while modestly increasing racial isolation. Whether that incremental step forward was worth the incremental step backward is a debatable question. . .

Spurlock, 716 F.3d at 403.

In bringing this suit, Plaintiffs acted in good faith, and other litigants pressing the same type of important societal and public interest issues should not be deterred by the specter of having to pay enormous costs to the opposing party. Indeed, "numerous district courts in this circuit have considered the potential chilling effect on future, similarly situated litigants to be a valid reason, among others, to decline to award costs." Lee v. Metro. Gov't of Nashville and Davidson Cnty, 2009 WL 2462209 at * 14 (M.D. Tenn. Aug. 10, 2009) (collecting cases) ("Plainly, given the amount of costs incurred here, an award of costs to the defendants would have a profound chilling effect on the very litigants who should be bringing claims – those with legitimate and detailed arguments that their civil rights have been violated").

Additionally, the three-named Plaintiffs' pecuniary status counsels against an award of fees

in this case because the affidavits they have submitted in objecting to the Bill of Costs show that they have no disposable income. The Spurlocks live on disability payments of $2,400 per month and Mr. Spurlock's work as a school system vendor where he is paid $9.00 per hour, but they pay out almost $1,500 per month in rent, child support and car payments. They also anticipate having to pay some of the hospital bills relating to Mr. Spurlock's $3,000 lung biospy, and Mrs. Spurlock's colonoscopy during which more than 20 polyps were removed.

Ms. Carroll is the sole support for her eight children. She and her family live on $800 per month from the Tennessee Department of Children's Services and $345 per month and food stamps from the Tennessee Department of Human Services, but pay $925 per month rent, and $280 per month on a car note. None of the three named Plaintiffs have any savings.

Defendants do not challenge Plaintiffs' assertions or indigency, or otherwise claim that Plaintiffs are able to afford the costs requested. Instead, they argue that "in this Circuit, 'the ability of a party litigant to pay costs' is not a factor a court may properly consider in deciding whether to award costs under Fed. R. Civ. P. 54." (Docket 360 at 3). They quote McDonald v. Petree, 409 F.3d 724, 732 (6th Cir. 2005) and cite White & White, 786 F.2d at 730 for that purported proposition. However, McDonald does not speak about "the ability of a party litigant to pay costs," but rather "'the ability of the prevailing party to pay his or her costs.'" McDonald quotes White & White which also does not mention the ability, or inability, of the losing party to bear the opponent's costs, but rather points out that a district court errs if it considers the prevailing party's ability to bear its own expenses without hardship in determining whether to assess costs under Rule 54(d).

Contrary to Defendants' contention, a number of Sixth Circuit cases confirm that a district court does not err in considering the losing party's ability to pay its opponent's costs in deciding

5

whether to shift costs. See, Jones v. Kolb, 84 Fed. Appx. 560, 561 (6th Cir. 2003); Sales v. Marshall, 873 F.2d 115, 120 (6th Cir. 1989); see also, Anderdson v. Jo-Ann Stores, Inc., 2011 WL 36038560 at *2 (M.D. Tenn. Aug. 15, 2011) ("the district court may consider the capacity of the indigent litigant to pay costs"). Thus, "[a]lthough the ability of the winning party to pay his own costs is irrelevant, . . . another factor weighing in favor of denying costs is the indigency of the losing party." Singleton, 241 F.3d at 539 (citation omitted); see also, Cain v. Montgomery Cnty, 2013 WL 67677 at *1 (M.D. Tenn. Feb. 25, 2013) (citation omitted) ("'courts in the Sixth Circuit may not consider the size of the prevailing party's recovery or the ability of the prevailing party to pay his own costs,'" but "[i]f a losing party is indigent, however, a court may properly consider that.")

### III.

"[T]he exercise of discretion authorized by Rule 54(d) is 'intended to take care of a situation where, although a litigant was the successful party, it would be inequitable *under all the circumstances in the case* to put the burden of costs upon the losing party.'" Hunter v. Gen'l Motors Corp., 161 Fed. Appx. 502, 504 (6th Cir. 2005) (emphasis in original) (quoting, White & White, 786 F.2d at 730). Under all the circumstances of this case, the Court finds that it would be inequitable to award cost to Defendants, and, therefore, exercises its discretion by denying Defendants' Bill of Costs.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE